Rucker v. Hyde.

JOHN H. RUCKER *et al. v.* WEE HYDE *et al.*

*(Nashville.* December Term, 1906.)

1.  **EJECTMENT.** Deraignment of title to the common source is
    sufficient, when.

    In ejectment, it is not necessary for complainant to deraign his title
    into a grant from the State, where complainant and defendant
    both claim to derive title from a common source subsequent to
    the grant. (*Post, p.* 361.)

2.  **DEEDS OF TRUST TO SECURE DEBTS.** Recitals of trus-
    tee's deed are prima facie evidence against makers, when.

    The recitals in a deed of conveyance of land from the trustee to
    the purchaser, showing full compliance with the power, terms,
    and directions of sale contained in a deed of trust executed by
    a husband and wife to secure a debt, and authorizing a foreclos-
    ure sale by the trustee in case of default in payment, are *prima
    facie* evidence as against both the husband and wife that the di-
    rections of the deed of trust were followed, and, in the absence
    of any evidence to the contrary, are sufficient evidence of full
    compliance with the requirements of their deed, although the
    wife is claiming under a tax deed under a tax sale subsequent-
    ly made. (*Post, pp.* 360-366.)

    Cases cited and approved: Naugher v. Sparks, 110 Ala., 572; Wil-
    liamson v. Mayer, 117 Ala., 261.

    Cases cited and distinguished: Henderson v. Galloway, 8 Hum.,
    692; Wilcox v. Blackwell, 99 Tenn., 353; Swainson v. Scott, 111
    Tenn., 140.

3.  **TAXATION.** Time of payment confined to taxes assessed un-
    der the act fixing such time, when.

    The provision in Acts 1899, ch. 435, sec. 43, that all taxes to be
    collected under the act shall be payable on the first Monday in
    November, 1899, etc., must be construed to refer to the taxes as-

Rucker v. Hyde.

sessed under that act, and not to taxes assessed under prior stat-
utes.    (*Post, pp.* 366-370.)

Acts cited and construed:   1897, ch. 1, sec. 6; 1899, ch. 435, sec. 43.

4.   **SAME.**   Proper time of sale of land for delinquent taxes assess-
ed for year **1898.**

A tax sale of land for delinquent taxes assessed for the year 1898,
made on the first Monday in September, 1899, is void, because
such sale was required to be made on the first Monday in July,
1899.    (*Post, pp.* 368-370.)

Acts cited and construed:   1899, ch. 435, secs. 52, 53, and 82.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County.
—JOHN ALLISON, Chancellor.

I. L. PENDLETON and H. C. LASSING, for complainants.

THOS. H. MALONE, JR., for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the
Court.

This is an ejectment bill to recover the possession of
a tract of land in Davidson county and also for the pur-
pose of removing clouds from the complainant's title.
The chancellor and the court of chancery appeals con-
curred in pronouncing a decree in favor of complain-
ants. The defendants appealed and have assigned errors.
The facts appearing from the report of the court of
chancery appeals are:

That on December 19, 1894, and prior thereto, the defendant Wee Hyde was the owner of the land in litigation.  On that date Hyde and wife conveyed the land in trust to H. C. Lassing to secure a note for $2,500 that day executed to complainant Rucker for borrowed money.  The deed of trust provided that the note to Rucker should mature in three years and the interest thereon was payable semiannually.  The deed of trust provided that, upon default in the payment of the note when due, the trustee was empowered, "upon giving twenty days' notice by daily publication in some news-paper published in Nashville, Davidson county, Tennessee, to sell said property at the courthouse door in said county, to the highest bidder, for cash, and free from the equity of redemption, homestead, and dower." It further provided that the creditor might bid at any sale under this conveyance.  The trustee was authorized to make a deed to the purchaser, and to apply the proceeds of sale to the payment of the note, and to hold any surplus subject to the order of, etc.

It further appears that, default having been made in the payment of the note secured in the deed of trust, the trustee, September 8, 1898, advertised and sold the land under the terms of the trust deed, when it was bid in by complainants Rucker and Furnish at the price of $2,500, and on the same day the trustee, Lassing, executed to the purchasers a deed to the property.  This deed recites as follows:

"And whereas, the said Wee Hyde defaulted in the

payment of the interest on said note, and defaulted and failed to pay the principal of the said note when the same became due and payable, and failed to pay the taxes accruing on the property described in said deed of trust, and I, Henry C. Lassing, trustee under said deed of trust, after due advertisement in the Nashville Banner for a period of four weeks, did, on Thursday, September 8, 1898, at the courthouse door in Davidson county, sell the hereinbefore described property to the highest bidder for cash, and the said property was struck off and sold to J. J. Rucker and J. J. Furnish at their bid of $2,500, the same being the highest bid."

The deed from the trustee to the purchasers is full and explicit in its recitals of the sale, etc., and shows a literal compliance with the powers conferred on the trustee. Complainants did not deraign their title into a grant from the State, nor was such a deraignment necessary, since complainants and defendant both claimed to derive title from a common source, viz., Wee Hyde.

Complainants relied alone upon the deed made to them by the trustee under his foreclosure sale, together with the other facts herein stated.

It is said on behalf of defendant that complainant has failed to show title to the land in controversy, for the reason there is no evidence that the trust deed to H. C. Lassing was foreclosed in accordance with its terms, except the recitals in the deed of Lassing, trustee, to complainants, and it is insisted that such recitals

are not proved against the defendant Mrs. Judie C. Hyde. It appears that the defendant Mrs. Judie C. Hyde, wife of the defendant Wee Hyde, now claims title to the land through a tax sale made by the county trustee September 6, 1899, for taxes for the year 1898, assessed to her husband, Wee Hyde. On the 27th day of September, 1902, Ben R. Webb, clerk of the circuit court of Davidson county, executed to the defendant Dr. D. F. Banks, a tax deed conveying this land to him for the sum of $29.31. March 13, 1903, Banks executed a quit-claim deed to defendant Judie C. Hyde. Mrs. Hyde is now claiming the land in controversy under said tax proceedings, and her insistence is that she is not bound by the recitals in the deed executed by the trustee, Lassing, to the complainants.

As already stated, Mrs. Judie C. Hyde joined her husband in the deed of trust to H. C. Lassing, trustee, and the question now presented is whether the recitals in the deed of the trustee to the purchaser at the foreclosure sale are *prima facie* evidence against Mrs. Hyde, so as to obviate the necessity of any proof on the part of complainants that the foreclosure sale was conducted in accordance with the provisions and directions of the deed of trust.

In the case of *Henderson* v. *Galloway*, 8 Humph., 692, this court said:

"When, by the terms of the deed, the trustee is required, before making a sale, to give notice to the bargainor of the time and place of sale, the giving of such

notice is in the nature of a condition precedent, and, if not complied with, the sale is unauthorized and void, and will communicate no title to the purchaser; and, if the requirement be that personal notice shall be given, the trustee cannot substitute notice by advertisement in a newspaper, or at some public place or places, because not within the scope of his authority, and also because such a departure on the part of the trustee might be made to defeat the very object of the requirement by enabling him to sell the property without the knowledge of the party making the deed. The court therefore held that the recital in the trustee's deed that he had given the notice to the grantor required by the terms of the deed is not, as against persons claiming as purchasers under a subsequent deed of trust by the same grantor, *prima facie* evidence of the fact of his having done so."

It will be observed that the parties sought to be bound by the recitals in the trustee's deed in the last-mentioned case were purchasers under a subsequent deed of trust by the same grantor. Such purchasers were not parties to the trust deed wherein the recitals were made, nor were they privies in estate or blood, and in this respect that case is to be distinguished from the one now under consideration. The case of *Swainson* v. *Scott,* 111 Tenn., 140, 76 S. W., 909, was an action of ejectment to recover a tract of land in Monroe county, Tennessee. Defendant denied complainant's title and averred a superior title to all the land claimed.

Complainants, in the deraignment of their title from the State, failed to produce a grant to the land in controversy. The existence of the original grant was sought to be established by secondary evidence; that is to say, the complainants, in introducing the links in their chain of title, produced certain deeds which on their face referred to the original grant. And it was insisted that these recitals were sufficient to establish the fact that the grant did issue. This court held:

"It is clear that the mere recitals in said deed are not competent to establish the existence of the grant against the defendant. Such recitals would, of course, bind the original parties to the deeds and their privies in estate or blood, and all those claiming under them; but they do not bind strangers to the deed in which the recitals were made, nor those who claim by title paramount and by an adverse title. Newell on Ejectment, 343; *Wilcox* v. *Blackwell,* 99 Tenn., 353, 41 S. W., 1061."

In that case the party sought to be bound by the recitals of a grant in the prior conveyance was a stranger to those conveyances, and hence was not bound by their recitals.

The precise question with which we are now dealing arose in the case of *Naugher* v. *Sparks,* 110 Ala., 572, 18 South., 45. The court held:

"Where a mortgage contains authority to sell lands conveyed therein on default of payment, and confers upon the mortgagee the right to purchase at such sale, and authorizes the auctioneer making the sale to convey

the lands to him by proper deed, and, acting under the authority conferred by the mortgage, the land is sold, and the auctioneer making the sale executes a deed, purporting to act in conformity to the authority granted in such mortgage, and which recites that the sale was duly made after and in pursuance of due advertisement, at the time and place and strictly in accordance with the terms of the mortgage, such deed of the auctioneer and the recitals thereof are *prima facie* evidence of the facts stated therein as against the mortgagor and his privies. . . . In the case before us, the mortgage itself provided the conditions and terms of sale, and authorized the auctioneer to convey the lands by proper deed to the purchaser. The grantor described himself in the conveyance as the 'auctioneer acting under the appointment in the mortgage,' and the deed purports to be an execution of the power granted. We must presume the recitals are *prima facie* true against the mortgagor, the grantor of the power, and his privies."

To the same effect is *Williamson* v. *Mayer Bros.*, 117 Ala., 261, 23 South., 3; 13 Cyc., p. 611. Mr. and Mrs. Hyde were both parties to the original trust deed, and the trustee in the foreclosure sale acted as their agent. Hence the recitals of the deed from the trustee to the purchaser are *prima facie* evidence as to them, and devolve upon them the burden of proof to overthrow the recitals. No proof having been introduced to show that the foreclosure sale was not conducted strictly in pursuance of the directions of the trust deed, the re-

citals in the deed from the trustee to the purchaser at the foreclosure sale are sufficient evidence of such fact.

We are therefore of opinion that complainant's title to the land in question must prevail unless the defendant Judie C. Hyde has shown a superior title by virtue of her deed under the tax proceedings.

Mrs. Hyde is claiming title to the land in controversy through a tax deed acquired in the following manner: This land was assessed for taxes for the year 1898 as the property of Wee Hyde. The trust deed by Hyde and wife to Lassing was executed December 19, 1894, and the trustee's deed to complainants Rucker and Furnish under the foreclosure proceeding was dated September 8, 1898. The taxes were not paid, and the land was sold by the county trustee presumably under the act of 1897. The court of chancery appeals held that the sale should have been made, under the act of 1899, on the first Monday in July, and not on the first Monday in September, and, having been made on the latter date, the sale was void, and likewise the deed of the clerk based thereon. If the sale was void, no title passed thereunder to the State, and no title passed by the deed of the clerk to the defendant Banks, and he communicated no title under his deed to the defendant Mrs. Judie C. Hyde.

This question was decided by this court in the case of *Holt* v. *Williamson County Bank & Trust Co.* (MS. opinion), wherein it was held that a tax sale made on

the first Monday in September, 1899, when it should have been made, under the act of 1899, on the first Monday in July, was illegal and void. The holding in *Holt* v. *Williamson County Bank,* supra, was that the State and county taxes for the year 1899 should have been collected by a sale under the act of 1899, advertised in June, 1899, and made in July, 1899. Counsel for appellant asks a reconsideration of the question decided in *Holt* v. *Williamson County Bank,* supra, upon the ground that section 43 of the act (Acts 1899, p. 1130, c. 435), seems to have been overlooked by the court. That section provides as follows:

"That all taxes, State, county and municipal, to be collected under this act shall be payable on the first Monday in November, 1899," etc.

It is said that taxes collectible under the act of 1899, were not even payable until the first Monday in November, 1899, and hence it was never contemplated that property should be sold for taxes under this act in July, 1899. It was said in the *Holt Case* as follows:

"This act of 1899 provided for a sale of land for delinquent taxes on the first Monday in July, and the terms are broad enough to cover all taxes not paid at that date, no matter for what year, and it must have been the subject and purpose of the legislature to have all sales for delinquent taxes made at the same date, no matter when assessed, if they were unpaid on the first Monday in July."

It is said the taxes for the year 1898 had been assessed under the act of 1897 to the owner on January

10, 1898. They had become delinquent in March, 1899, and the county trustee had issued distress warrants, Acts 1897, p. 7, c. 1, sec. 6.

It will be observed that section 43 provides that all taxes, State, county, and municipal, to be collected under this act (1899), shall be payable the first Monday in November, 1899, etc. In our opinion the clear meaning of this statute is that all taxes assessed under the provisions of the act of 1899 shall be due and payable November 1, 1899; but, if said taxes are assessed under some prior act for some other year, they are, of course, not payable in November, 1899, but were payable as provided in the prior acts. In our opinion section 43, c. 435, p. 1130, of the Acts of 1899, must be construed to refer to taxes assessed under that act, and that section 43 should read: "That all taxes, State, county, or municipal, assessed and to be collected under this act, shall be payable the first Monday in November, 1899," etc.

The court of chancery appeals, in its opinion in the *Holt Case,* affirmed by this court, says:

"Chapter 435 of the Acts of 1899, regulating the assessment and collection of taxes, was passed April 27, 1899, and went into effect on the first Monday of June of that year. Section 82 of that act repeals all laws and parts of laws in conflict 'upon the subject of the assessment and collection of taxes, and the sale of land for taxes in conflict with the provisions of this act.' But it is provided this repeal shall operate as to taxes assessed under this act, but shall not operate as to inter-

fere with the taxes assessed prior to the passage of this act, except as hereinbefore specially otherwise provided.

"It will be noted that the language is 'shall not interfere with the taxes assessed prior to the passage of this act.'

"Section 52 of the act provides that 'after the first day of June of each year the trustee shall advertise all real estate upon which taxes remain due and unpaid, or which is liable for sale for their taxes at the door of the courthouse of the county on the first Monday in July following.'

"Section 53 provides that 'on the first Monday in July, if the taxes remain unpaid, the trustee shall proceed to sell the land of each delinquent taxpayer for the amount of taxes due by him and all costs, interest, penalties, and charges therein to the highest bidder for cash, and the sale shall be continued from day to day,' etc.

"Now these provisions seem to expressly and especially apply to all lands upon which the taxes remain unpaid, without regard to the year for which the property was assessed, or if the taxes were due. The language of the act appears to plainly apply to all lands upon which the taxes remain unpaid, and it seems quite improbable that the legislature should have prescribed or intended to allow sales to be made in different months from the general sales day prescribed in the bill, simply

118 Tenn—24

because the taxes had accrued before the passage of the bill. The meaning and purpose of the provision that the act should not operate so as to interfere with taxes assessed prior to the passage of the act, except as specially otherwise provided, was evidently to provide that the act should not interfere with steps already taken in the assessment and collection of taxes assessed prior to the passage of the act."

Recognizing the authority of this case, which was in all respects affirmed by this court, we are of opinion that the act of 1899 governed the sale in the present case, and that act prescribed the first Monday of July, and not the first Monday of September, as the proper date for making such sale. The trustee, therefore, had no power to make the sale on the first Monday of September. The said sale was, therefore, void and the deed communicated no title to the purchaser, Mrs. Judie C. Hyde.

For the reasons stated, the decrees of the chancellor and of the court of chancery appeals must be affirmed.