KERN, Executor, et al., Appellants, *v.* ROBERTSON, Respondent.

(No. 6,903.)

(Submitted February 13, 1932. Decided April 13, 1932. Opinion on Motion for Rehearing Filed June 25, 1932.)

[12 Pac. (2d) 565.]

284

*Mr. T. N. Marlowe, Mr. James D. Taylor* and *Mr. Harry H. Parsons* (now of the Bar of San Bernardino, California), for Appellants, submitted a brief; *Mr. Taylor* argued the cause orally.

*Messrs. O'Hara, Madeen & Grant,* for Respondent, submitted a brief; *Mr. Robert A. O'Hara* argued the cause orally.

MR. JUSTICE FORD delivered the opinion of the court.

On and prior to January 3, 1917, Milburn G. Kern was the owner of two tracts of land in Ravalli county. On that date he entered into a contract with James Weber, under the terms of which Kern agreed to sell, and Weber agreed to buy, one tract on deferred payments. On November 17, 1920, Kern deeded both tracts of land to his wife, Cynthia J. Kern. Thereafter, in November, 1922, Mrs. Kern entered into a contract with Paul D. Lear, under which she agreed to sell, and Lear agreed to purchase, the second of these tracts, on deferred payments, deed to be delivered upon final payment. The purchaser in each instance went into, and has at all times remained in, possession, and both contracts are in full force and effect.

On February 12, 1926, Mrs. Kern executed her will, which contains the following provision: "I give, devise and bequeath all my estate, both real and personal, to my husband, Milburn G. Kern, to have and hold the same during his natural life with the power, however, to him to sell and convey all or any part thereof, or to mortgage the same or any part thereof, and to use the proceeds thereof to all intents and purposes as if he were the owner thereof in fee, and if any thereof

remain at the time of his death, I devise and bequeath the same to his heirs and to my heirs, share and share alike.'' Kern was nominated and appointed executor of the will without bond and with authority to ''sell or mortgage any of the property of my estate devised to him as hereinabove mentioned without an order of the court authorizing him to do so.''

Mrs. Kern died on November 17, 1927, and plaintiff was appointed executor of her estate which is in process of administration.

On January 24, 1925, a judgment was duly made and entered against Kern, and thereafter, and on January 17, 1930, execution was issued on the judgment and the lands referred to were levied upon and sold by the sheriff, and a certificate of sale issued to defendant. This action was commenced by Kern, as executor and devisee under the will, to quiet title to the lands; he claiming ''that the said sheriff's certificate of sale constitutes and is a cloud on the title of the plaintiff herein and to the above described lands, and if left outstanding may cause serious injury to the plaintiff herein.'' There was judgment for defendant, and plaintiff appeals.

The determinative question presented for consideration is: Upon the death of Mrs. Kern, what, if any, interest in the lands described in the complaint passed to Kern as devisee under the will?

The authorities are in accord that an enforceable contract for the purchase and sale of real property passes to the purchaser the equitable and beneficial ownership thereof, leaving only the naked legal title in the seller, as trustee for the purchaser, and as security for the unpaid purchase price. If the purchaser dies while the contract is in force and effect, his interest passes to his heirs as real property. If the seller dies while the contract is in force and effect, his interest passes to his personal representative as personal property, and not to his heirs.

''Applying one of its fruitful principles, that what ought to be done is regarded as done, equity says that from the contract, even while yet executory, the vendee acquires a 'real'

right, a right of property in the land, which though lacking legal title, and therefore equitable only, is none the less the real, beneficial ownership, subject, however, to a lien of the vendor as security for the purchase price as long as that remains unpaid. This property in the land, upon the death of the vendee, descends to his heirs, or passes to his devisees, and is liable to the dower of his widow. The vendor still holds an equitable ownership of the purchase money; his property, as viewed by equity, is no longer real estate, in the land, but personal estate, in the price, and if he. dies before payment, it goes to his administrators, and not to his heirs. In short, equity regards the two contracting parties as having changed positions, and the original estate of each as having been 'converted,' that of the vendee from personal into real property, and that of the vendor from real into personal property." (1 Pomeroy's Equity Jurisprudence, 4th ed., sec. 105, pp. 117, 118; see, also, sec. 368, p. 685, Id.; 3 Id. secs. 1159–1168, pp. 2744–2769; Story's Equity Jurisprudence, 14th ed., p. 486.) The text is fully borne out by the authorities. (*Detroit Trust Co.* v. *Baker,* 230 Mich. 551, 203 N. W. 154, 204 N. W. 773; *Detroit & Security Trust Co.* v. *Kramer,* 247 Mich. 468, 226 N. W. 234; *Colignon* v. *Artz,* 205 Wis. 51, 236 N. W. 585; *Berndt* v. *Lusher,* 40 Ohio App. 172, 178 N. E. 14; *Retsloff* v. *Smith,* 79 Cal. App. 443, 249 Pac. 886; *Pinson* v. *Pinson,* 150 S. C. 368, 148 S. E. 211; *Taylor* v. *Interstate Inv. Co.,* 75 Wash. 490, 135 Pac. 240; *Robinson* v. *Pierce,* 278 Pa. 372, 123 Atl. 324; *Blair* v. *Snodgrass,* 1 Sneed (33 Tenn.), 1; *Flomerfelt* v. *Siglin,* 155 Ala. 633, 130 Am. St. Rep. 67, 47 South. 106; *Stockfleth* v. *Britten,* 105 N. J. Eq. 3, 146 Atl. 583, 586; *Clapp* v. *Tower,* 11 N. D. 556, 93 N. W. 862; *Ward* v. *Williams,* 282 Ill. 632, 118 N. E. 1021; *Koehne* v. *Beattie,* 36 R. I. 316, 90 Atl. 211; *In re Denning's Estate,* 112 Or. 621, 229 Pac. 912; *Bowne* v. *Ide,* 109 Conn. 307, 66 A. L. R. 1036, 147 Atl. 4.)

The doctrine of equitable conversion does not apply to ▉ option contracts. The distinction between contracts such as the ones before us, where the vendor has undertaken to

sell to a vendee who undertakes to buy the land involved, and a unilateral option, is clear. The former are mutually enforceable, while the latter is a mere offer to sell—a continuing offer of a contract—which may be accepted, within the time designated in the option, but is not enforceable against the optionee. (*Gallup* v. *Sterling*, 22 Misc. Rep. 672, 49 N. Y. Supp. 942.) Taking the option contract, we are committed to the doctrine that such a contract does not work an equitable conversion and that title remains in the owner until full compliance with the terms of the contract by the purchaser. (*Knapp* v. *Andrus*, 56 Mont. 37, 180 Pac. 908; *Tyler* v. *Tyler*, 50 Mont. 65, 144 Pac. 1090.) "When an option to purchase land is given, according to the doctrine most in accord with authority and principle the conversion is deemed to have taken place at the time the option is declared and not from the date of the contract giving the option. The maxim underlying the doctrine of equitable conversion rests on a duty to do something, and until the option is exercised there is no duty and it cannot be known whether there ever will be a duty. Hence, conversion should not be presumed as of a date earlier than the date when the duty becomes certain, as that would be unreasonable and the same in effect as if the duty existed from the outset. The person granting the option must in reason be presumed to intend that the discharge of the duty shall take effect for all purposes only from the date when by his direction the duty becomes absolute through the occurrence of an uncertain event. To hold otherwise would carry a rule, unknown to the common law and created by courts of equity because founded on reason, far beyond the bounds of reason. As intention is involved, or presumed intention, which must be reasonable, the manifest inconvenience of holding otherwise cannot be ignored." (6 R. C. L., p. 1088, sec. 21; *Inghram* v. *Chandler*, 179 Iowa, 304, L. R. A. 1917D, 713, 161 N. W. 434; *Rockland-Rockport Lime Co.* v. *Leary*, 203 N. Y. 469, Ann. Cas. 1913D, 62, L. R. A. 1916F, 352, 97 N. E. 43.)

Here, under each of the contracts, the vendor and vendee mutually bound themselves to each other—one to sell and the other to buy, the land described upon deferred payments, and under the doctrine of equitable conversion the interest of the vendor was converted into personal property, and upon her death her interests in the partially performed contracts passed to her personal representative as personal property, and were not subject to the attempted execution upon real property for the debts of Kern, the devisee under the will. (*Bowen* v. *Lansing,* 129 Mich. 117, 95 Am. St. Rep. 427, 57 L. R. A. 643, 88 N. W. 384; *Beaver* v. *Ross,* 140 Iowa, 154, 17 Ann. Cas. 640, 20 L. R. A. (n. s.) 65, 118 N. W. 287.)

The sheriff's certificate of sale under execution upon a judgment against Kern was ineffectual and did not pass title to the purchaser; it constitutes a cloud upon the naked title held by the executor and the court erred in entering judgment for defendant.

The judgment is reversed and the cause remanded to the district court of Ravalli county, with direction to enter judgment for plaintiff Kern, as executor.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, ANGSTMAN and MATTHEWS concur.

---

ON PETITION FOR REHEARING.

MR. JUSTICE FORD delivered the opinion of the court.

Counsel for defendant contend that, since it is determined that under the facts disclosed by the record the doctrine of equitable conversion applies, and that upon the execution of the contracts the interest of Mrs. Kern was converted into personal property, and upon her death passed to her personal representative as personal property, the executor of her estate cannot maintain this action to quiet title to the lands in controversy.

While it is true, as pointed out in the opinion, that upon the execution of the contracts in question the beneficial interest in the lands passed to the purchasers, and under the doctrine of equitable conversion the interest of the vendor was converted into personal property, it is equally true that the naked legal title remained in the vendor, which she held as trustee for the vendees and as security for the purchase price remaining unpaid. Upon the death of Mrs. Kern, the naked legal title to the property passed to the executor, and, upon compliance by the purchasers with the terms of the contracts, the executor is required to convey the property free and clear of all clouds and encumbrances. In the event the full purchase price under the contracts is paid during administration, the executor, under order of court, executes the necessary conveyances. (Secs. 10268–10280, Rev. Codes 1921.)

Since, then, the executor held the naked legal title for the ██ purposes pointed out, was he a proper party to prosecute the action to quiet title and thus remove the cloud upon the naked legal title caused by the sheriff's certificate of sale?

Section 9479, Revised Codes 1921, which was in force when the action was commenced, provides: "An action may be brought and prosecuted to final decree, judgment, or order, by any person or persons, whether in actual possession or not, claiming title to real estate, against any person or persons, both known and unknown, who claim or may claim any right, title, estate, or interest therein, or lien or encumbrance thereon, adverse to plaintiff's ownership, or any cloud upon plaintiff's title thereto, whether such claim or possible claim be present or contingent, including any claim or possible claim of dower, inchoate or accrued, for the purpose of determining such claim or possible claim, and quieting the title to said real estate."

"A mere contract to convey land will not divest the vendor of his right to maintain an action to quiet title or remove a cloud therefrom when the legal title remains in him." (51 C. J. 176, and cases cited; *Jones* v. *Nixon*, 102 Tenn. 95, 50 S. W. 740; *Jackson Mill Co.* v. *Scott*, 130 Wis. 267, 110 N. W.

184; *Langlois* v. *Stewart*, 156 Ill. 609, 41 N. E. 177; *Coel* v. *Glass*, 232 Ill. 142, 15 L. R. A. (n. s.) 413, 83 N. E. 529.)

Defendant claims a right or interest in and to the legal title to the lands in controversy adverse to the executor's naked legal title; the sheriff's certificate of sale constitutes a cloud on the naked legal title held by plaintiff, as executor, and on his right to receive the payments under the contracts as well as his right to execute conveyances upon final payment under the contracts. In our opinion, under the provisions of section 9479, supra, the executor was a proper party to prosecute the action.

It is also contended that the record discloses that the estate, for more than two years prior to the commencement of the action, was in a condition to be closed, and that, since the executor failed and neglected to close the same, any right to bring the action expired when the time for distribution of the estate expired.

Section 10139, Revised Codes 1921, provides that, unless it satisfactorily appears to the court that the rents, issues and profits of the estate for a longer period are necessary wherewith to pay the debts of decedent, or that it will probably be necessary to sell real estate for the payment of such debts, "the court or judge, at the end of the time limited for the presentation of claims against the estate, must direct the executor or administrator to deliver possession of all the real estate to the heirs at law or the devisees."

Clearly, the purpose of this section is to require the speedy termination of probate proceedings, but the fact that plaintiff may have been derelict in his duty and that the court did not require him to deliver possession of all *real estate* to the devisee within the time prescribed by statute cannot affect the right of plaintiff to prosecute this action.

Petition for rehearing is denied.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, ANGSTMAN and MATTHEWS concur.