No. 88-60

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

LARRY L. HANNAH, MARK WHIPPLE,
ROBERT C. SLACK, et al.,

        Plaintiffs and Respondents,

  -vs-

RANDY L. MARTINSON, JOHN NICHOLS,
LOWELL KLATT, and VALLEY BANK OF
BELGRADE, et al.,

        Defendants and Appellants.

APPEAL FROM:  District Court of the Eighteenth Judicial District,
           In and for the County of Gallatin,
           The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Morrow, Sedivy & Bennett; Terry Schaplow, Bozeman,
        Montana

    For Respondent:

        Moore, Rice, O'Connell & Refling; Dorothy L. Brownlow,
        Bozeman, Montana

Submitted on Briefs:  June 2, 1988

Decided:  July 7, 1988

Filed:    JUL 7 - 1988

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiffs brought an action seeking to quiet title to certain real property located within Gallatin County. Following a hearing on the parties' motions for summary judgment, the District Court of the Eighteenth Judicial District, Gallatin County, issued a judgment and decree quieting title in plaintiffs. This appeal followed. We affirm.

Although the parties argue extensively as to whether a judgment lien is an "encumbrance" within the meaning of § 70-21-304, MCA; whether a judgment lienholder is an "encumbrancer"; and whether a judgment lien takes priority over an unrecorded deed. We conclude there is but one issue. Does a judgment lien attach to real property which has been transferred to another party by means of an unrecorded deed prior to the docketing of the judgment?

Plaintiffs are the original owners of Tract 17 of Certificate of Survey 471, Gallatin County. Plaintiffs subsequently sold the property to Byron G. Pride by written contract for deed. Pride in turn sold the property to defendant Martinson by a separate contract for deed dated January 30, 1979. A notice of Martinson's interest was recorded by the Gallatin County Clerk and Recorder shortly thereafter.

When Pride defaulted on his contract, plaintiffs honored the agreement with Martinson, who thereafter made contract payments directly to plaintiffs.

On January 15, 1981, Martinson executed and delivered a quit claim deed conveying his interest in the property to defendant Nichols. Martinson also executed a warranty deed

to Nichols of the same real property on January 15, 1981. However, the quit claim deed was not recorded until October 22, 1982, and the warranty deed was not recorded until June 14, 1983. In the meantime, Nichols had made the contract payments directly to the plaintiffs until he defaulted on April 13, 1983. Upon his default, plaintiffs repossessed the property and brought the instant action.

Defendant Klatt is the only person who disputes plaintiffs' claim to title. Klatt had obtained a judgment against Martinson on September 24, 1981. The judgment was subsequently docketed on September 28, 1981, after the time Martinson had delivered deeds of his interest in the property to Nichols, but before the deeds were recorded. This appeal followed the District Court's determination that Klatt's judgment lien did not attach to the real property.

Section 25-9-301(2), MCA, provides, in pertinent part:

> From the time the judgment is docketed, it becomes a lien upon <u>all real property of the judgment debtor</u> . . . <u>owned by him at the time</u> or which he <u>may afterward acquire until the lien ceases.</u> (Emphasis added.)

We note at the outset that Martinson never "owned" the property in fee simple. A vendee purchasing real property pursuant to a contract for deed holds an equitable title. Estate of Wooten (1982), 198 Mont. 132, 643 P.2d 1196; Kern v. Robertson (1932), 92 Mont. 283, 12 P.2d 565. Legal title remains vested in the vendor until such time as the contractual provisions are fully performed. <u>Kern</u>, supra; <u>Wooten</u>, supra. Our first task is therefore to determine whether the holder of an equitable title is an "owner" of real property within the meaning of § 25-9-301, MCA. Upon review of the applicable statutes, we conclude that an equitable ownership interest is sufficient.

- 3 -

In the instant case the phrase "all real property of the judgment debtor . . . owned by him at the time" does not, on its face, indicate whether the legislature intended to include fee simple title, legal title, equitable title or other interest in the property. However § 25-13-501, MCA, which provides for execution against the real property interests of a judgment debtor other than ownership in fee simple, clearly demonstrates a legislative intent to make a judgment lien operative against all real property interests. Equitable title is, therefore, an ownership interest which is subject to judgment liens. Accord, Fulton V. Duro (Idaho 1985), 700 P.2d 14; Cascade Sec. Bank v. Butler (Wash. 1977), 567 P.2d 631; Mutual Building & Loan Assoc. of Las Cruces v. Collins (N.M. 1973), 516 P.2d 677. Consequently, we now turn to the issue at hand.

The issue of the legal effect of judgment liens is not unknown to Montana jurisprudence.

In the case of Vaughn v. Schmalsle (1890), 10 Mont. 186, 25 P. 102, the court was asked to determined the legal position of a prior unrecorded mortgage and judgment lien obtained pursuant to a statute substantially identical to § 25-9-301, MCA. The court held:

> A judgment is not a specific lien on any particular real estate of the judgment debtor, but a general lien upon all his real estate, subject to all prior liens, either legal or equitable, irrespective of any knowledge of the judgment creditor as to the existence of such liens.. . .
>
> . . . the judgment creditor acquires thereby no higher or better right to the property or assets of the debtor than the debtor himself had when judgment was rendered, unless he can show some fraud or collusion to impair his rights. Correct statement of the rule is that the lien of a judgment creates a preference over subsequently acquired rights, but in equity it does not attach to the mere legal title to the land as existing in

- 4 -

> the defendant at its rendition, to the exclusion of a prior equitable title in a third person. Guided by these considerations, the court . . . will protect the equitable rights of third persons against the legal lien, and will limit that lien to the actual interest which the judgment debtor had in the estate at the time the judgment was rendered. (Emphasis added.)

10 Mont. at 194-195, 25 P. at 103. See also Rockefeller v. Dellinger (1899), 22 Mont. 418, 56 P. 822; Clack v. Clack (1935), 98 Mont. 552, 41 P.2d 32.

Application of the Vaughn rationale demonstrates the error of Klatt's contention that his judgment lien attached even though Martinson's interest had been transferred. A judgment lien can only attach to the actual interest of the judgment debtor. Vaughn, supra. See also Short et al. v. Karnop et al. (1929), 84 Mont. 276, 275 P. 278 (attaching creditor is neither a bona fide purchaser nor an encumbrancer of the attached property and therefore succeeds to and acquires only the rights of his debtor.) It can not attach to an interest which does not exist, nor can a judgment lien claim superiority as against a valid prior transfer.

A judgment lien can only bind an interest in real property when the debtor himself, during the existence of the judgment lien, could voluntarily transfer or alienate the interest. See Clack, 98 Mont. at 567, 41 P.2d at 37. As a matter of fact, the subsequent default by Nichols of the contract for deed, which caused a termination by Hannah, on April 13, 1983, itself would wipe out any lienable interest of Martinson in the property.

In light of our determination that the judgment lien failed to attach, the issue whether a judgment lien is an encumbrance, and the lien holder an encumbrancer within the meaning of the recording statutes, is moot.

The judgment is affirmed.

_____
John C. Sheehy
Justice

We Concur:

_____

_____
R. C. Gulbrandson,

_____
William E. Hunt Sr

_____
L. C. McDonough
Justices